UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) | Civil Action No. 6: 07-10-DCR |
| Plaintiff, | ) ) ) | |
| V. | ) ) | |
| FRIENDS OF KY FAMILIES, INC., MICHAEL B. PHELPS, Individually, LINDA WELLS, f/k/a LINDA HENEGAR, Individually, and J.L. (a minor) By and Through his Mother and Next Friend LISA PREWITT, | ) ) ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of minor Defendant J.L.'s Motion to Dismiss for lack of jurisdiction and Motion to Set Aside the Clerk's Entry of Default as to Defendant Friends of Kentucky Families and Defendant Michael B. Phelps. [Record Nos. 9, 29] A hearing was held on the pending motions on April 30, 2007. The issues have been fully briefed and are ripe for review.

Having reviewed the parties' briefs and the applicable law, the Court concludes that it should not exercise jurisdiction over the Plaintiff's claim for declaratory relief under the circumstances of the case. Therefore, Defendant J.L.'s Motion to Dismiss will be granted, and this action will be dismissed, without prejudice, so that it may be re-filed in the Knox Circuit

Court or another state court of competent jurisdiction. The remaining motions will be denied as moot.[1]

I.  **BACKGROUND**

American Home Assurance Company ("American") filed this action for declaratory relief pursuant to 28 U.S.C. § 2201 on January 9, 2007. In its Complaint, American seeks a declaration concerning its obligation to indemnify or provide coverage for claims asserted against Friends of Kentucky Families, Inc. and its employees in an underlying action filed in the Knox Circuit Court.

Friends of Kentucky Families was a social service agency that provided counseling for troubled children until it was administratively dissolved in November, 2004. American provided insurance for Friends of Kentucky Families under a Social Service Agency Professional Liability Policy beginning in May, 2003. In the underlying action in the Knox Circuit Court, Defendant J.L. contends that Friends of Kentucky Families and several of its employees are vicariously liable for alleged acts of sexual abuse and exploitation by one of its former employees, Barron

---

[1]  Although J.L.'s Motion to Set Aside the Clerk's Entry of Default will be denied as moot, the Court notes that the clerk's entry of default should be considered void because this Court lacks jurisdiction over this declaratory action. *See Golden v. National Finance Adjusters*, 555 F. Supp. 42, 45 (E.D. Mich. 1982) (noting that "a default judgment entered by a court without subject matter jurisdiction is void"); *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (holding that "[u]nder Rule 60(b)(4), a court may grant relief from a default judgment on the ground that the judgment was void" and that "[a] judgment is void if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law").

Moreover, the Sixth Circuit has noted that "[i]t is important to distinguish between an entry of default and a default judgment." *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 353 (6th Cir. 2003). "That is, 'a stricter standard of review applies for setting aside a default once it has ripened into a judgment." *Id.* (citations omitted). An entry of default may be set aside "for good cause shown" under Rule 55(c) of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 55(c).

Greis. Greis was employed by Friends of Kentucky Families from April 2002 until he was terminated in August 2002.[2] The state court action has been ongoing for three years and is currently scheduled for trial in the Knox Circuit Court beginning August 13, 2007. American is not a party to that action.

In its Complaint for declaratory relief, American contends that J.L's allegations arise from events that occurred outside the policy period, or, alternatively, that the policy limits liability for allegations of sexual misconduct to $25,000. According to American, J.L. has conceded that most of his claims arise from the actions of Greis while he was employed by Kentucky Friends of Family, and American asserts that any such acts in 2002 are not covered by the policy.

On January 25, 2007, J.L. filed a Motion to Dismiss this action for lack of jurisdiction. J.L. argued that the state court is a more appropriate forum for addressing the issue of the insurance coverage because the underlying action in Knox Circuit Court has been ongoing for three years and involves extensive discovery and because American is using this action as "procedural fencing" to put pressure on J.L. Additionally, J.L. states that the underlying case is not limited to alleged acts of sexual misconduct while Greis was employed by Friends of Kentucky Families, but also includes acts that occurred in 2003.

---

[2] Greis pled guilty to five counts of sexual misconduct before this Court in July, 2004, in London Criminal Action No. 04-CR-43-DCR. He received a term of imprisonment of 405 months to be followed a life term of supervised release.

**II.     DISCUSSION**

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The Act "confers discretion on courts, not right on litigants" and "the propriety of issuing a declaratory judgment may depend on equitable considerations."  *American Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (*citing Green v. Mansour*, 474 U.S. 64 (1985)).  Accordingly, "[w]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate."  *Id*.

In deciding whether to exercise jurisdiction over a declaratory judgment action, a court must first determine whether subject matter jurisdiction exists.  *See Brotherhood Mutual Insurance Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 691 (E.D. Ky. 2002) (noting that "the Declaratory Judgment Act does not provide for its own subject matter jurisdiction; the plaintiff must establish that the district court has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action").  If the Court finds that subject matter jurisdiction does exist, it must then "evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act."  *Id*. at 692.

It is well-settled that district courts have discretion "in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995);

*Aetna Casualty & Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996). Therefore, although this Court may exercise jurisdiction, it is clear that it is "under no compulsion" to do so. *Wilton*, 515 U.S. at 278; *see also* 28 U.S.C. § 2201(a).

The United States Court of Appeals for the Sixth Circuit has identified several factors that a district court should consider in determining whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act, including,

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Aetna*, 74 F.3d at 687 (*quoting Grand Trunk*, 746 F.2d at 326). However, this list of factors is not exhaustive, as "the Court must make a full inquiry into all relevant considerations." *Brotherhood*, 200 F. Supp. 2d at 692. Ultimately, the dispositive inquiries are "whether the judgment 'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Brotherhood*, 200 F. Supp. 2d at 692 (*citing Aetna*, 74 F.3d at 687). If "neither of these results can be accomplished, the court should decline to render the declaration prayed." *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (*quoting* E. Borchard, Declaratory Judgments 299 (2d ed. 1941)).

In the present case, American asserts that this Court has diversity jurisdiction because there is complete diversity of citizenship between the Plaintiff and the Defendants and because

the amount in controversy exceeds $75,000.00, exclusive of interest and costs. [Record No. 1] The Defendants have not challenged these assertions, and, after reviewing the record, the Court is satisfied that diversity jurisdiction has been established.[3] However, as discussed below, the Court concludes that it would not be appropriate to exercise jurisdiction under the Declaratory Judgment Act under the particular circumstances of this case.

First, the underlying action has been going in Knox Circuit Court for three years and trial is scheduled to begin in approximately six weeks. Although the insurance company is not a party to that action, J.L. contends that American has been providing a defense and negotiating with J.L. on Friends of Kentucky Families' behalf. The parties have engaged in discovery in that action, and the issues before this Court would require resolutions of some of the same factual disputes which are currently before the Kentucky state court. For example, American contends that all of J.L.'s allegations concerning sexual abuse and exploitation occurred in 2002, outside the policy coverage. However, J.L. contends that the alleged acts occurred in 2003 while Greis' father was employed by Friends of Kentucky Families.

---

[3] The Court initially questioned whether this action satisfied the amount in controversy requirement for diversity jurisdiction. [*See* Record No. 33.] However, the law in this circuit is clearly established that the amount in controversy in a declaratory judgment action "should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (*quoting Woodmen of the World v. Scarbro*, 129 F. App'x 194, 195-96 (6th Cir. 2005). This amount "include[s] not only the face value of the insurance contract, but also compensation awardable by law for mental anguish and for loss of business income, attorneys' fees, and punitive damages. In short, 'the object of the litigation, cannot be determined without reference to the potential cost of the state claim to the insurance company.'" *Id.*

American contends that, if there is coverage under the policy, it is limited to $25,000 because the underlying allegations involve sexual misconduct. This amount, by itself, is insufficient to satisfy the jurisdictional requirements. However, because the total of amount of the policy exceeds $75,000, and because the attorneys' fees and other possible compensation awards must be included in the amount in controversy in a declaratory action, the Court is satisfied that the jurisdictional requirement has been met.

The resolution of these facts is necessary to determine whether American is required to provide coverage in the underlying action. And because "[t]hese facts would necessarily be developed at a trial of the tort action, and may have a direct bearing on the determination of whether the insuring clause of the [] policies, or the exclusions control [American's] obligations," these issues would be more properly resolved in connection with the state court proceeding. *Allstate Ins. Co. v. Mericer*, 913 F.2d 273, 278 (6th Cir. 1990) (noting that "[w]ithout any factual record, there is a real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts"); *see also Brotherhood*, 200 F. Supp. 2d at 693 ("While different legal issues are presented in the federal and state court actions, the actions are still parallel 'in the sense that the ultimate legal determination in each depends on the same facts.'") (citations omitted). Accordingly, the Court is not convinced that this declaratory judgment action would serve a "useful purpose" in clarifying the legal relations at issue. *See Mercier*, 913 F.2d at 279 (noting that a declaratory judgment would "not serve a useful purpose in clarifying and settling the legal relations between the insurer and the insureds, because the policy exclusions can be applied only in the light of factual determinations that have not been made").

Additionally, the determination of insurance coverage in this case is essentially a state law issue, and American could have presented its request for declaratory relief "in a separate action to the same court that will decide the underlying tort action." *Brotherhood*, 200 F. Supp. 2d at 693. As the Sixth Circuit noted in *Allstate Insurance Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990), "[t]he states regulate insurance companies for the protection of their residents,

and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Mericer*, 913 F.2d at 279. "To outweigh this state interest, 'more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first." *Brotherhood*, 200 F. Supp. 2d at 693. American has not made such a showing here. Instead, American generally contends that "[t]his Court is just as able to render an informed decision as the Knox Circuit Court." [Record No. 11, p. 9]

Nor does American's reliance on *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003), offer support for this Court to exercise jurisdiction under the circumstances of the current case. In *Northland*, the Sixth Circuit upheld the district court's exercise of jurisdiction because the insurance company was not a party to the state court action, there was no evidence of procedural fencing, the "circumstances suggest[ed] that Northland filed this action only after it became apparent that its insured had no colorable claim to coverage or defense," the state court would not have necessarily provided a better forum, and because the court's exercise of jurisdiction would not create fiction between state and federal courts. *Northland*, 327 F.3d at 454.

In upholding the district court's decision, the Sixth Circuit outlined several factors that courts should consider in determining whether exercising jurisdiction over the declaratory action would increase the friction between state and federal courts:

> 1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy,

> or whether federal common or statutory law dictates a resolution of the declaratory action.

*Id*. at 454 (*citing Scottsdale Ins. Co. v. Roumph*, 18 F. Supp. 2d 730, 735 n.5 (E.D. Mich. 1998)).

The factors articulated by the Court in *Northland* weigh against the Court's exercise of jurisdiction in the present case. First, as discussed previously, the underlying factual issues in the state tort action are highly relevant to a determination of the insurance coverage in this case. This Court would have to determine when the alleged acts of sexual abuse and exploitation took place and whether American is required to provide coverage for Friends of Kentucky Families in connection with those allegations. Second, although this Court is capable of determining these issues, the state court record is already developed and the case is set to go to trial in less than two months. If this Court were to proceed with the declaratory judgment, there is a substantial likelihood that the determination of coverage could be contrary to the state court's resolution of the factual disputes. In addition, the Court has already noted repeatedly that a resolution of the policy coverage would require resolution of some of the same factual issues that are before the state court. Thus, there is a "close nexus between the underlying factual and legal issues." *Id.*; *see also Brotherhood*, 200 F. Supp. 2d at 693 ("While different legal issues are presented in the federal and state court actions, the actions are still parallel 'in the sense that the ultimate legal determination in each depends on the same facts.'") (citations omitted).

Finally, although a ruling from this Court on American's request for declaratory relief would solve the narrow issue of whether American has to provide coverage for Friends of Kentucky Families in the underlying state court action, there is a substantial likelihood that the declaratory remedy is being used for "procedural fencing" and "to provide an arena for a race

for res judicata." Although American contends that it filed this action "for the justifiable purpose of determining whether it has any coverage obligations regarding the underlying suit," the circumstances indicate that American may be attempting to obtain a default judgment against its insured to bind the plaintiff in the underlying action.

As American recently noted in its brief to this Court concerning Defendant J.L.'s motion to set aside the clerk's entry of default, a judgment in this action would have *res judicata* effect on a later action between J.L. and American. It is clear that Friends of Kentucky Families and its employees do not have any real interest in the outcome of this declaratory action because they are either bankrupt or subject to personal liability regardless of this Court's determination of policy coverage. Therefore, the only Defendant who is actually affected is J.L. because he will be prohibited from bringing a later claim against American after he obtains a judgment in state court. Under Kentucky law, J.L. would prohibited from bringing a direct action against the insurer until he obtains a judgment against the insured. *See Moores v. Fayette County*, 418 S.W. 2d 412 (Ky. 1967) ("[a] claimant may not join the insured and the insurer in an action based on the insured's negligence."). By engaging in a 'race for *res judicata*" through this declaratory action, American may be attempting to have this Court resolve the issues before the state court can clearly adjudicate the facts which may or may not give rise to liability on behalf of Friends of Kentucky Families and American. *See Evans*, 791 F. 2d at 63. As the Sixth Circuit noted in *American Home Assurance Co v. Evans*,

> because the ordinary procedure for determining such questions is an action in indemnity for recovery of the policy proceeds, it appears likely that this action is, if not "procedural fencing" certainly part of a race for res judicata. The availability of a traditional indemnity action as a more appropriate means of

enforcement also argues against the grant of declaratory judgment in this case. Moreover, the only basis of jurisdiction here is diversity jurisdiction. We question the need for federal courts to issue declaratory judgments in such cases where a state court has already accepted jurisdiction over the subject matter of the lawsuit. We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.

*Evans*, 791 F.2d at 63.

Under the circumstances of this case, it is clear that a declaratory judgment from this Court will not serve a *useful purpose* in clarifying and settling the legal relationships in issue and will not terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. Accordingly, it is hereby

**ORDERED** that Defendant J.L.'s motion to dismiss [Record No. 9] is **GRANTED**. This action is **DISMISSED**, without prejudice, and stricken from the Court's docket. Any pending motions are **DENIED**, as moot.

This 29th day of June, 2007.

Signed By:
*Danny C. Reeves* DCR
United States District Judge